IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRITTINGHAM 62, LLC,                :

    Plaintiff,                      :

v.                                  :    Civil Action No. GLR 12-3104

SOMERSET COUNTY                     :
SANITARY DISTRICT, INC.,
                                    :
    Defendant.
                                    :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiff Brittingham 62, LLC's ("Brittingham") Motion to Remand this action to the Circuit Court for Somerset County, Maryland. (ECF No. 10). Brittingham alleges that Defendant Somerset County Sanitary District, Inc.'s ("District") removal of this action is improper because this Court lacks jurisdiction under the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341 (2012).

The two primary issues before the Court are: (1) whether the charges imposed by the District constitute a tax for the purposes of barring federal jurisdiction under the TIA; and (2) whether Maryland law affords Brittingham a "plain, speedy and efficient" remedy as required by the TIA. The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons that follow, Brittingham's Motion to Remand will be granted.

1

## I. BACKGROUND[1]

The District is a public corporation incorporated in 1959 by County Commissioners for Somerset County. The District is authorized, pursuant to Md. Code Ann., Envir. § 9-600 (West 2012), to acquire, construct, operate, and maintain water and sewer systems in Somerset County. The statute permits the District to finance these projects by borrowing funds and imposing front-foot benefit assessments against benefitted properties to repay the incurred debt.

Brittingham is a Maryland limited liability company that has owned property in the Princess Anne/Westover subdistrict since 2006, and receives water and sewage services from the District. The corporate limits of Princess Anne and the University of Maryland Eastern Shore ("UMES") are also located in this subdistrict.

In 2004, after repeated sewage overflows, concerns arose regarding the District's capacity to serve existing and future users in the Princess Anne area due to inadequate sewage facilities. To remedy these issues and accommodate planned development for land situated along UMES Boulevard, the District implemented a public infrastructure improvement that involved laying new pipes ("force main"), constructing new pump stations,

---

[1] Unless otherwise noted, the following facts are taken from the Complaint.

and expanding existing systems (collectively referred to as the "Bypass Project").

The District secured a $3.2 million loan from the United States Department of Agriculture ("USDA") to fund the Bypass Project, which was completed in 2007. From 2006 until the completion of the Bypass Project, the District was unable to provide services to new developments in Princess Anne. Properties desiring water and sewage services were placed on an allocation (waiting) list. Since project completion, the general public and affected property owners have experienced several benefits, including the elimination of sewage overflows and backups, an increase in overall capacity of the Princess Anne sewage system, and the installation of 2,600 feet of new water main. Although not included in the original plans for the Bypass Project, the District also used part of the USDA loan to execute an emergency replacement of its Crisfield Lane well.

Brittingham applied for service in 2007, which the District later approved. In 2008, the District placed Brittingham in the allocation queue, but, to date, the District has not installed a connector from the new bypass force main to Brittingham's property. From January 2008 until present, the District has imposed annual, front-foot benefit assessments on eight to ten privately owned properties, including Brittingham's, which the District determined to have specially benefitted from the Bypass

Project.  The revenue from the assessments is exclusively used by the District to pay off the USDA loan.

In 2008, 2009, and 2010, the District charged, and Brittingham paid, $51,420.00, $49,679.95, and $50,379.33, plus interest, respectively in front-foot benefit assessments.  In 2011 and 2012, the District charged Brittingham additional assessments to maintain its placement in the allocation, but Brittingham refused to pay.  In May 2012, Brittingham requested a refund of the 2009 and 2010 assessment payments, and cancellation of the 2011 and 2012 unpaid assessments, both of which the District denied.

On September 19, 2012, Brittingham filed a Petition of Appeal in the Maryland Tax Court ("Tax Court") for a refund of the 2009 and 2010 assessment payments. (See Def.'s Mot. to Dismiss or Alt. Summ. J. ["Def.'s Mot. to Dismiss"] Ex. 6 at 1, ECF No. 5-7).  The same day, Brittingham also filed a Complaint for Declaratory Judgment, Injunctive and Other Relief in the Circuit Court for Somerset County challenging the unpaid and future benefit assessments, and requesting reimbursement for the 2009 and 2010 assessment payments.  (ECF No. 2).  The District removed the case to this Court on October 22, 2012 (ECF No. 1), and subsequently filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on October 26, 2012.  (ECF No. 5).  Brittingham filed the pending Motion to Remand on November 15, 2012.

4

## II. DISCUSSION

**A.   Standard of Review**

Federal courts have removal jurisdiction over state court actions "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a) (2012). A district court has original jurisdiction over civil claims arising under federal law, 28 U.S.C. § 1331 (2012); over civil actions where the amount in controversy exceeds $75,000, exclusive of interests and costs, and there is complete diversity of citizenship, 28 U.S.C. § 1332(a) (2012); and over actions where the "putative state law claim has been totally subsumed by federal law." Lontz v. Tharp, 413 F.3d 435, 439-40 (4th Cir. 2005). The removing party has the burden of proving the existence of federal jurisdiction. See Strawn v. AT & T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008).

When the plaintiff challenges the propriety of removal, the defendant bears the burden of proving that removal was proper. See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." Richardson v. Phillip Morris, Inc., 950 F.Supp. 700, 702 (D.Md. 1997) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). This standard reflects the reluctance of federal courts "to interfere with matters properly before a state court." Id. at 701.

Nevertheless, the federal remand statute provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ."  28 U.S.C. § 1447(d) (2012).  In other words, "a district court should be cautious in denying defendants access to a federal forum because remand orders are generally unreviewable."  Semtek Int'l, Inc. v. Lockheed Martin Corp., 988 F.Supp. 913, 914–15 (D.Md. 1997); see also In re Lowe, 102 F.3d 731, 736 (4th Cir. 1996) ("[A] federal court loses jurisdiction over a case as soon as its order to remand the case is entered.").  If an order to remand is entered, all remaining pending motions are moot.  In re Lowe, 102 F.3d at 736.

B. **Analysis**

Brittingham avers that this matter should be remanded to the Circuit Court for Somerset County because the Tax Injunction Act strips this Court of jurisdiction.  The Court agrees.  As a result, Brittingham's Motion to Remand will be granted.

The TIA bars federal jurisdiction in cases involving state or local taxes when a plain, speedy, and efficient remedy exists at the state court level.  See 28 U.S.C. § 1341 (2012).[2]  The TIA's "broad restriction on federal court jurisdiction over state and local tax matters reflects the importance of the taxing power to

---

[2] "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

the operation of state governments as well as the desire of the Congress to restrain federal courts from unduly interfering with state revenue collection." Collins Holding Corp. v. Jasper Cnty., S.C., 123 F.3d 797, 799 (4th Cir. 1997) (citations omitted). Moreover, the TIA "has been interpreted broadly to bar suits for declaratory and injunctive relief . . . and suits for refunds or monetary relief[.]" Id. at 799 n.2 (citations omitted). The TIA "is a jurisdictional bar not subject to waiver." Antosh v. City of Coll. Park, 341 F.Supp.2d 565, 568 (D.Md. 2004).

The application of the TIA in this case hinges upon a twofold inquiry: (1) whether the front-foot benefit assessments constitute a tax; and (2) whether Maryland state courts afford Brittingham an adequate judicial remedy. For the reasons fully discussed infra, the Court finds that the District's benefit assessments constitute a tax for purposes of the TIA, and that Maryland state courts afford Brittingham a process to pursue judicial review of its claims.

**1. Front-Foot Benefit Assessments:  Fee versus Tax**

Under the standard elaborated by the United States Court of Appeals for the Fourth Circuit in Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130, 134 (4th Cir. 2000), the benefit assessments levied by the District constitute a tax because they are imposed as a legislative function, with an underlying purpose

7

of financing the construction of an infrastructure that benefits the general public of Princess Anne.

The nebulous line between tax and fee is determined by federal law. <u>Folio v. City of Clarksburg, W. Va.</u>, 134 F.3d 1211, 1217 (4th Cir. 1998). A classic tax describes a charge imposed by a legislature on a broad population that is spent to benefit the general public. <u>San Juan Cellular Tel. Co. v. Public Serv. Comm'n of P.R.</u>, 967 F.2d 683, 685 (1st Cir. 1992). A classic fee is conferred by an administrative agency upon a specific group subject to the agency's regulation to offset administrative costs associated with the regulatory activities. <u>Id.</u>; <u>see also</u> <u>Valero</u>, 205 F.3d at 134. Courts have recognized that charges rarely fall neatly into either the fee or tax categories. <u>San Juan Cellular</u>, 967 F.2d at 685.

The Fourth Circuit has adopted the following three-part test to determine whether a charge is a tax or fee. The test considers: (1) the nature of the entity imposing the charge; (2) the population subject to the charge; and (3) the purposes served by the revenue obtained from the charge. <u>Valero</u>, 205 F.3d at 134. When the application of the <u>Valero</u> test yields an ambiguous result, "the most important factor becomes the purpose behind the statute, or regulation, which imposes the charge." <u>Id.</u> (citation omitted).

Here, the first prong of the Valero test is satisfied in favor of the assessments being considered a tax because, as both parties concede, the District is performing a legislative function and not simply acting as an administrative agency. (See Pl.'s Mot. to Remand at 3-4; Def.'s Mot. to Dismiss at 11). The dispute, however, arises between the second and third prongs of the test.

Regarding the second Valero prong, the District argues the assessments are considered a fee because they are only imposed on the eight to ten property owners the District has deemed specially benefitted by the completion of the Bypass Project. Brittingham counters that regardless of who is actually charged the assessment fees, the relevant inquiry is who ought to be charged. Although only eight to ten properties currently bear the burden of financing the Bypass Project, Brittingham argues the population subject to the charges would be far greater if the charges were constitutionally imposed. As it stands, the assessments are imposed on the few properties who, prior to the Bypass Project, could not receive water and sewer service and are, thus, considered to have specially benefitted by the project's completion. (See Street Dep. 107:2-18, May 31, 2012, ECF No. 13-2). The determination of whether this prong contributes to the assessments being deemed a fee or tax, however, is not dispositive

of the Court's ultimate finding regarding the nature of the assessments.

As previously noted, when the results of the analysis are ambiguous, the court places greater weight on the third prong of the Valero test, which concerns the purposes served by the revenue. Valero, 205 F.3d at 134; see also State of S.C. ex rel. Tindal v. Block, 717 F.2d 874, 887 (4th Cir. 1983); San Juan Cellular, 967 F.2d at 685. At bottom, the purpose of the assessment charge is to ameliorate debt incurred by the District in financing a project that benefits a substantial segment of the Princess Anne community.

The District contends that the exclusive purpose of imposing the front-foot benefit assessments is to repay the $3.2 million loan from the USDA, and is, therefore, not spent to benefit the public. The relevant inquiry, however, is not "solely . . . *where* the money goes, the issue is *why* the money is taken." Hager v. City of W. Peoria, 84 F.3d 865, 870-71 (7th Cir. 1996) (emphasis in original).

The current record shows that the existing gravity sewer system in Princess Anne was at or above capacity, and inadequate to meet the needs of the town. The Bypass Project was more cost effective than the replacement of the entire gravity sewer system. The Bypass Project produced manifold benefits: (1) the replacement and upgrade of two pumping stations, (2) rerouting of sewage from

the old gravity system through the new force main, (3) the replacement of gravity lines running along Front Street, (4) the reduction and/or elimination of sewage overflows, (5) an overall increase in the capacity of the Princes Anne sewer system, and (6) the installation of over 2,600 feet of new water main. These improvements benefit the general public.

This matter falls squarely within this Court's ruling in Antosh, where this Court held that fees imposed on residential units for trash collection constituted a tax in light of the public benefit of trash disposal services funded by the revenue. Here, the USDA loan was necessary to fund public infrastructure improvements that benefit the entire town. Therefore, the repayment of that debt is inextricably tied to the public benefit. See id. at 569 (holding that fees for residential trash collection services constituted a tax because the revenue was channeled into a general fund for public waste management).

Accordingly, the District's front-foot benefit assessments are a tax, which, pursuant to the TIA, will bar federal jurisdiction of this case if an adequate state court remedy exists.

**2. Availability of an Adequate State Court Remedy**

In the present case, Maryland law provides a comprehensive remedial scheme that satisfies the requirements of the TIA. The Supreme Court has held that a remedy meets the TIA requirement

11

"only if it provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." California v. Grace Brethren Church, 457 U.S. 393, 411 (1982) (citations and internal quotation marks omitted). Therefore, the question is whether adequate judicial review of the removed claim is available under state law. See Collins Holding Corp., 123 F.3d at 800.

The District argues that Maryland law does not provide Brittingham with a plain, speedy, and efficient remedy in state court for three reasons: (1) the Tax Court does not have jurisdiction over Brittingham's claims because the benefit assessments are not a tax issue within the scope of Md. Code Ann., Tax-Gen. § 3-103 (West 2012)[3]; (2) Brittingham's action of filing claims in both the Tax Court and Circuit Court for Somerset County belie the lack of a plain and speedy remedy in state court; and (3) this Court is more equipped to adjudicate Brittingham's federal constitutional claims.

---

[3] Within this argument, the District also avers that, under well-settled Maryland law, a benefit assessment is wholly distinct from a tax. The District relies upon Beauchamp v. Somerset Cnty. Sanitary Comm'n, 220 A.2d 135 (1966), to support this averment. This argument is not dispositive of the issue because, under Md. Code Ann., art. 24 § 9-710, a claim for a refund may be filed with the proper entity regarding the "tax, fee, charge, interest, or pentalty" at issue. Refund disputes are, therefore, not limited to the "tax" label. Moreover, a denial of a refund related to any of these charges may be appealed to the Tax Court pursuant to Md. Code Ann., art. 24 § 9-712(d)(1).

As a preliminary matter, a claimant may file a claim for refund with the collecting entity when the "tax, fee, charge, interest, or penalty . . . is erroneously, illegally, or wrongfully assessed or collected in any manner." Md. Code Ann., art. 24 § 9-710(2) (West 2012). If denied a refund, Maryland law outlines an appeal process that the claimant may pursue. First, the claimant may appeal the refund denial to the Tax Court. See Md. Code Ann., art. 24 § 9-712(d)(1) (West 2012). If denied relief in Tax Court, the party may seek judicial review in the Circuit Court and, if unfruitful, to the Court of Special Appeals. See Md. Code Ann., Tax-Gen. § 13-532(a) (West 2012); Md. Code Ann., State Gov't § 10-223(b)(1)(West 2012).

Here, Brittingham requested a refund of its benefit assessment payments from the District. Upon denial, Brittingham simultaneously filed an appeal of the District's refund denial in the Tax Court, as required by Md. Code Ann., art. 24 § 9-712(d)(1), and its complaint for injunctive and declaratory relief in the Circuit Court for Somerset County. According to Brittingham, the circuit court filing was necessary to challenge the unpaid assessments because the Tax Court does not have jurisdiction over those claims. Brittingham also argues that because the Tax and Circuit Courts have concurrent jurisdiction over the underlying constitutional issue, the Circuit Court may

invoke the doctrine of primary jurisdiction to assume jurisdiction over the refund claim as well.

This Court has previously held that the remedial scheme available for challenging a refund denial, and addressing the associated constitutional challenges, "meets the procedural criteria required by the plain, speedy, and efficient provision in the TIA." Antosh, 341 F.Supp.2d at 569.  A mere assertion that a federal court is more equipped to hear a constitutional issue does not overcome the applicability of the TIA in barring federal jurisdiction.  For these reasons, the Maryland statutory remedial scheme meets the TIA requirement thereby necessitating remand to state court.

### III. CONCLUSION

For the foregoing reasons, Brittingham's Motion to Remand (ECF No. 10) is GRANTED.  A separate Order will issue. Entered this 31st day of January, 2013

```
              _____/s/_____
              George L. Russell, III
              United States District Judge
```